IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE SOCIETY OF LLOYD'S, | : | Case No. 1:06-CV-286 |
| | : | |
| Plaintiff | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING |
| | : | DEFENDANTS' MOTION TO |
| ALFRED A. MOORE AND BETTY R. | : | STRIKE FEBRUARY 20, 2006 |
| MOORE REVOCABLE TRUST, et al., | : | EMAIL FROM LAWRENCE A. |
| | : | GLASSMANN |
| Defendants. | : | |
| | : | |

This matter is before the Court on Defendants' Motion to Strike February 20, 2006 Email

from Lawrence A. Glassmann (hereinafter "Motion to Strike").  (Doc. 15.)  For the reasons that

follow, the Court **GRANTS** Defendants' motion.

I.      BACKGROUND

The events setting in motion the current dispute date back decades, beginning in the late

1980s when Defendant Lea Ward became an underwriter in the English insurance market.  In

connection with that position, Ward incurred certain liabilities.  On March 11, 1998, The Society

of Lloyd's ("Lloyd's) obtained a judgment against Ward in an English court in the amount of

£224,138.15 ("English Judgment").  Subsequently, Lloyd's commenced an action in this Court,

case no. 1:04-CV-191, to domesticate the English Judgement ("Collection Action").  The Court

ultimately entered summary judgment for Lloyd's in that suit.

Meanwhile, Lloyd's learned that Ward had transferred approximately $2,000,000 in

assets to two separate trusts of which she is a beneficiary.  Accordingly, Lloyd's sued Ward,

1

Defendants Alfred and Betty Moore, and other parties, case no. 1:05-cv-32, alleging claims for common law fraud and fraudulent transfer ("Fraud Action").  On January 3, 2006, the Court granted summary judgment for the Defendants on Lloyd's common law fraud claim, but denied summary judgment on the fraudulent transfer claim.

After the Court issued its summary judgment opinion in the Fraud Action, the parties agreed to submit the remaining matters to arbitration and mediation.  (Arbitration and Mediation Agreement, Doc. 1 Ex. B.).  The parties executed an Arbitration and Mediation Agreement ("the Agreement"), under which the parties agreed to a procedure known as arb-med.  The parties chose a single panelist, Lawrence A. Glassmann, to arbitrate and mediate the dispute.  Pursuant to the procedure set forth in the Agreement,[1] the arbitration occurred first.  At the close of the

---

[1] The Agreement established, in relevant part, the following procedures:

> 3.    Arbitration: Prior to the mediation described in the next paragraph, all Claims shall be decided via arbitration as set forth herein.  The arbitration shall be final and binding, and shall not be subject to review or appeal.  Each party hereto waives any and all right to make or assert any Claim or Claims other than as set forth herein, and waives any and all rights to venue, jurisdictional, or similar defenses, and further waives its right to trial by jury or trial before a Court with respect to any Claim.  The decision of the Arbitrator shall be written and signed by the Arbitrator.  Any such decision shall be enforceable in any state or federal court in the United States.  The expenses of such enforcement, including attorney fees, shall be paid by the party against whom enforcement is sought. Lawrence Glassmann shall conduct the arbitration and mediation described herein. . . .
>
> 4.    Mediation: At the end of the arbitration, the Arbitrator will make his decision but will not disclose any party hereto his decision until and unless the parties reach an impasse in the mediation.  The parties will commence mediation, which shall continue as long as both parties consider it to be productive.  During this process, the Arbitrator may, without revealing his verdict, discuss what he perceives to be the weaknesses and strengths of each party's respective case. . . . [U]pon any party determining it cannot reach a mediated settlement, the Arbitrator then shall immediately disclose to all parties the decision he privately reached in the arbitration proceeding.

(Arbitration and Mediation Agreement, Doc. 1 Ex. B at ¶¶ 3-4.)

arbitration, Glassmann rendered a decision, but did not reveal it to the parties.  Instead, the

parties attempted to mediate the dispute.  During the course of the mediation, on February 20,

2006, Glassmann sent Society of Lloyds an email communicating his opinions about the

strengths and weaknesses of Lloyd's case and urging Lloyd's to reach a settlement with

Defendants.

Having become clear to all involved that further mediation would not yield a settlement,

the parties agreed to the revealing of the arbitrator's decision.  On February 21, 2006, Glassmann

revealed his decision, wherein he found for the Defendants and ordered Lloyd's to pay the cost

of arbitration.[2]  The following day, Defendants sent Lloyd's a proposed order dismissing with

prejudice the remaining claims in the Fraud Action, pursuant to a clause in the Agreement stating

that "upon the Arbitrator making known his decision in the event the parties cannot agree in

Mediation . . . Lloyd's and Respondents will dismiss the Case with prejudice and execute a full

release and hold harmless of all Claims against the other."  (Id. at ¶ 13.)  Lloyd's agreed to the

proposed order and on February 24, 2006, the Court entered an order dismissing the Fraud

Action with prejudice and allotting the parties 60 days to reopen the action, upon good cause

shown, if settlement was not consummated.

---

[2] The decision comprises a one-page verdict form that Lloyd's counsel drafted.  The form
allowed Glassmann to find for either Plaintiff or Defendants and to enter an award for attorneys
fees and arbitration costs.  Glassmann entered a verdict for Defendants as follows:
> I hereby determine that the transfer of the house located at 9600 Tall Trail into the
> Moore Trust does not constitute a fraudulent transfer under the Ohio Uniform
> Fraudulent Transfer Act, and accordingly order Lloyd's to pay to Mr. Moore the
> sum of $ 6,400  representing the fees and expenses of arbitration as set forth in
> paragraph 5 of the Agreement, and the sum of $ None representing attorney fees
> and/or punitive damages under Paragraph 6 of the Agreement.

(Doc. 1 Ex. D.)

Nearly three months later, Lloyd's filed the instant action seeking to vacate the arbitration award on the basis that Glassmann based the award on matters outside the scope of the Agreement.  In support of its Motion to Vacate the Arbitration Award (doc. 1), Lloyd's relies almost entirely on the comments Glassmann included in his February 20, 2006 email. Defendants move the Court to strike this email, arguing that it constitutes a confidential mediation communication under the Uniform Mediation Act, Ohio Rev. Code §§ 2710.01 *et seq*. ("the Act").  Lloyd's responds that the Act does not shield Glassmann's communication because: (1) the email discussed matters outside the scope of the Agreement; (2) the Act applies only to mediation rather than to hybrid arb-med procedures; (3) the parties waived any confidentiality or privilege that might otherwise apply; and (4) the parties agreed in advance that such communications would not be privileged.

## II.    ANALYSIS

Ohio Rev. Code § 2710.03 provides, in relevant part, as follows:

(A) Except as otherwise provided in section 2710.05 of the Revised Code, *a mediation communication is privileged* as provided in division (B) of this section *and is not subject to discovery or admissible in evidence in a proceeding* unless waived or precluded as provided in section 2710.04 of the Revised Code.
(B) In a proceeding, the following privileges apply:
    (1) A mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication.

(emphasis added).  The Act defines "mediation communication" to include "a statement, whether oral, in a record, verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator."  Ohio Rev. Code § 2710.01(B).  This broad definition encompasses communications such as that at issue in this case.  Glassmann's email was sent during the

4

mediation and included comments aimed at fostering a settlement between the parties.  Such

comments fall squarely within the scope of § 2710.01(B) and are therefore privileged under §

2710.03.  Accordingly, the party seeking admission of the comments will prevail only if it can

show that: (1) the Act does not apply to the mediation the parties engaged in; (2) the comments

are not subject to the privilege, but rather fall within one of the exceptions enumerated under §

2710.05; or (3) the parties have waived the privilege in accordance with § 2710.04.  Lloyd's

makes all of these arguments but, for the reasons set forth below, fails to demonstrate that

Glassmann's email is not a privileged mediation communication.

**A.      The Scope of the Mediation and Arbitration Agreement**

Lloyd's first contends that Ohio Rev. Code § 2710.03 does not apply to Glassmann's

email communication because the email contained comments about matters outside the scope of

the Agreement – namely the issue of laches and the resolution of a separate claim against one of

the defendants.  Lloyd's cites § 2710.02, which provides that:

> (A) Except as otherwise provided in division (B) or (C) of this section, sections
> 2710.01 to 2710.10 of the Revised Code apply to a mediation under any of the
> following circumstances:
>> (1) The mediation parties are required to mediate by statute or court or
>> administrative agency rule or referred to mediation by a court,
>> administrative agency, or arbitrator.
>> (2) The mediation parties and the mediator agree to mediate in a record
>> that demonstrates an expectation that mediation communications will be
>> privileged against disclosure.
>> (3) The mediation parties use as a mediator an individual who holds
>> himself or herself out as a mediator, or the mediation is provided by a
>> person that holds itself out as providing mediation.

Lloyd's argues that, pursuant to this section, the Act does not apply to Glassmann's email

because it relates to matters that the parties never agreed to mediate.  However, § 2710.02 does

not indicate that when parties agree to enter mediation, the Act will shield only those

5

communications relating to matters the parties specifically and expressly agreed to mediate.

Instead, it speaks generally of certain types of mediation to which the Act applies.

Moreover, even if the Court were to read § 2710.02 as Lloyd's suggests, it finds that the

parties did not limit the scope of the mediation in the manner that Lloyd's asserts.  The portion

of the Agreement that limits the "[i]ssue to be decided" applies only to the arbitration procedure

as opposed to both the arbitration and the mediation.  As described above, the Agreement

describes the arbitration and mediation as separate and distinct proceedings.  The parties

submitted the dispute to arbitration and did not engage in mediation until after the arbitration

was complete and Glassmann had made his decision.   The Agreement limits only "the issue to

be decided by the Arbitrator"[3] and sets forth the specific issues that the arbitrator is to decide

following the Arbitration.  As the Agreement required the arbitrator to render his decision at the

close of the arbitration and prior to the commencement of mediation, the limiting clause

necessarily applies only to the arbitration.  It states nothing in regards to limiting the issues the

parties may address during the mediation.  Nor does any other portion of the Agreement indicate

an intent to limit the scope of the parties' mediation.

The very nature of mediation calls for an uninhibited process wherein parties may

explore various solutions to their disputes.  It is neither uncommon nor unforeseeable that in

trying to reach a settlement as to specific claims, parties may engage in a discussion of other

related claims.  To hold that Ohio Rev. Code § 2710.03 shields only communications regarding

matters specifically contemplated and set forth by parties prior to entering mediation would

unduly hinder the ability of parties to freely and openly discuss settlement options.  It is

---

[3] See Arbitration and Mediation Agreement, Doc. 1 Ex. B at ¶ 8.

precisely for this reason that courts have traditionally recognized a broad privilege surrounding

mediation and other settlement communications.  See Goodyear Tire & Rubber Co. v. Chiles

Power Supply, Inc., 332 F .3d 976, 980 (6th Cir. 2003) ("The ability to negotiate and settle a

case without trial fosters a more efficient, more cost-effective, and significantly less burdened

judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their

communications. Parties are unlikely to propose the types of compromises that most effectively

lead to settlement unless they are confident that their proposed solutions cannot be used on cross

examination, under the ruse of "impeachment evidence," by some future third party. Parties must

be able to abandon their adversarial tendencies to some degree. They must be able to make

hypothetical concessions, offer creative quid pro quos, and generally make statements that would

otherwise belie their litigation efforts. Without a privilege, parties would more often forego

negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon

itself, and the judicial efficiency it fosters is lost."); Fair Housing Advocates Ass'n, Inc. v.

Terrace Plaza, No. 2:03-CV-0563, 2006 WL 2334851, at *8 (S.D. Ohio Aug. 10, 2006)

(recognizing "a strong public interest supporting the confidentiality of settlement negotiations");

Duncan v. Vernon Tp. Trustees, No. CA2000-05-015, 2001 WL 32806, at *1 n.1 (Ohio App.

12th Dist. Jan 16, 2001) (citing the previous version of § 2710.03 and stating, "Mediation

communications are confidential and shall not be disclosed, subject to very limited exceptions.

This rule is based on the premise that confidentiality lies at the heart of successful mediation

programs. Parties to a mediation must be confident that the information they are sharing will not

be revealed outside of the mediation, especially to the court." (internal citations omitted)).

**B.      Application of the Act to the Hybrid Arb-Med Procedure**

Lloyd's next argues that § 2710.03 applies only to mediation as opposed to a hybrid

arbitration and mediation, as occurred in this case.  Lloyd's contends that the dual role of an

arbitrator/mediator under these circumstances distinguishes Glassmann's email from that of a

simple mediation communication.  Along the same line, Lloyd's argues that the Court should

apply by analogy § 2710.02(B)(3), which provides that § 2710.03 is inapplicable in cases where

the "mediation is conducted by a judge or magistrate who might make a ruling on the case."

According to Lloyd's, the same concern is present here in that the mediator was also the person

vested with authority to render a binding decision upon the parties.

Lloyd's argument fails for several reasons.  First, when Glassmann sent the February 20

email, he had already rendered his decision as an arbitrator and was acting solely in the role of a

mediator.  Second, Lloyd's offers no caselaw suggesting the Court should read and apply  §

2710.02(B)(3) as broadly as Lloyd's requests.  To the contrary, the Court finds that had the Ohio

legislature intended to exclude from the scope of § 2710.03 those cases in which the same

individual serves as an arbitrator and a mediator, it would have specifically stated as such.[4]

Finally, courts have previously applied this privilege to situations such as that in the instant case

in which one person serves as both the mediator and the arbitrator.  See Bowden v. Weickert,

No. S-02-017, 2003 WL 21419175, at *6 (Ohio App. 6th Dist. June 20, 2003) (holding that even

though the parties had engaged in a hybrid med-arb proceeding, where the same individual

---

[4] Indeed, the legislature refers specifically to an arbitrator in other sections of the Act, indicating that had it intended to include arbitrators within the exception set forth in § 2710.02(B)(3), it would have done so explicitly.

served as mediator and arbitrator, the parties' confidential mediation communications remained

privileged).

Lloyd's additionally argues that Glassmann's comments would otherwise be discoverable

and admissible in the Court's consideration of Lloyd's Motion to Vacate and should not be

stricken merely because Glassmann made the comments in the context of a mediation.  Lloyd's

relies on § 2710.03(C), which provides that "[e]vidence or information that is otherwise

admissible or subject to discovery does not become inadmissible or protected from discovery

solely by reason of its disclosure or use in a mediation."  As stated above, § 2710.03(A) creates a

privilege for "mediation communication[s]," defined broadly as "*a statement*, whether oral, in a

record, verbal or nonverbal, *that occurs during a mediation*."  Ohio Rev. Code § 2710.01(B)

(emphasis added).  In contrast, § 2710.03(C) pertains to evidence or information exchanged

between the parties and possibly referenced by the parties during mediation, clarifying that the

mere fact that the parties might reference that evidence in a mediation communication does not

render that evidence inadmissible.

Though the Court could not locate any cases interpreting § 2710.03(C), other courts have

come to similar conclusions when interpreting analogous language in Fed. R. Evid. 408, which

states that the "rule does not require the exclusion of any evidence otherwise discoverable

merely because it is presented in the course of compromise negotiations."  For example, in

Ramada Dev. Co. v. Rauch, the Fifth Circuit held that an architect's report that was

commissioned specifically as a basis to foster settlement was not within the "otherwise

discoverable" exception of Rule 408 because "such an exception does not cover the present case

where the document, or statement, *would not have existed but for the negotiations.*" 644 F.2d

1097, 1106-07 (5th Cir. 1981) (emphasis added).   Similarly, Ohio Rev. Code § 2710.03(C)

serves only to prevent parties from immunizing from admissibility documents or other evidence

by utilizing this evidence during the mediation.  The exception does not apply to the mediator's

own comments, made in furtherance of the mediation, regarding his opinion of the strengths and

weaknesses of the parties' respective cases.

## C.      Waiver of the Privilege

Defendants finally argue that in the event the Court determines that Glassmann's email

falls within the scope and applicability of § 2710.03(C), the parties waived any confidentiality by

agreeing to the disclosure of the arbitrator's decision process.  As evidence of this alleged

agreement, Lloyd's cites to paragraph 4 of the Agreement, in which the parties agree that

"[d]uring [the mediation] process, the Arbitrator may, without revealing his verdict, discuss what

he perceives to be the weaknesses and strengths of each party's respective case."  Lloyd's

interpretation of this clause is entirely unsupported.  The language Lloyd's cites has nothing to

do with the confidentiality of the parties' discussions, but rather authorizes the mediator to

disclose his opinions regarding the disputed issues *to the parties, during the course of the*

*mediation*.  It in no way authorizes further disclosure of the mediator's comments to outside

parties or in the context of separate proceedings such as the instant suit.

Lloyd's additionally argues that the email itself indicates Defendant's intention to waive

confidentiality because Glassmann indicates that both parties gave him oral authorization during

the course of the proceeding to disclose his thoughts regarding the strengths and weaknesses of

each party's position.  This alleged oral authorization merely reiterates the language in paragraph

4 of the Agreement and for the same reasons discussed above does not constitute a waiver of

confidentiality.  Accordingly, Lloyd's fails to demonstrate any basis for this Court to hold that

Ohio Rev. Code § 2710.03(C) does not shield Glassmann's email.  To the contrary, the Court

finds that the email constitutes a confidential mediation communication and is inadmissible in

the instant proceeding.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Strike Glassman's

February 20, 2006 email.  The Court will not consider this communication when ruling on

Plaintiff's Motion to Vacate the Arbitration Award.  (Doc. 1.)

IT IS SO ORDERED.


                                        ___s/Susan J. Dlott_____
                                        Susan J. Dlott
                                        United States District Judge